

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES M. PACKARD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 5130 |
| | ) | Paul E. Plunkett, Senior Judge |
| v. | ) | |
| | ) | |
| TCF NATIONAL BANK | ) | |
| and DANIEL HOFFMAN | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

James Packard ("Plaintiff") has filed a three-count complaint against TCF National Bank ("the Bank") and Daniel Hoffman alleging reverse gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), as well as state law claims of intentional infliction of emotional distress ("IIED") and interference with business relations. Defendants have filed a Federal Rule of Civil Procedure 12(b) motion to dismiss Count II of Plaintiff's complaint. Defendants argue that this IIED claim should be dismissed because it is preempted by the Illinois Human Rights Act ("IHRA") and, alternatively, that Plaintiff has not pled facts sufficient to support a claim for intentional infliction of emotional distress. Based on the foregoing, we grant Defendants' motion to dismiss because part of it is preempted and because Plaintiff fails to allege sufficient egregious conduct by Defendants.

## Facts

We accept as we must the following facts which are alleged in the complaint. Packard, a white male, was an employee with Bank from September 16, 1996 through April 11, 2003. (Pl.'s Compl. ¶¶ 1, 10.) Plaintiff last was employed as a branch lending manager and was supervised by Hoffman, also a white male. (*Id.* ¶¶ 11, 16.) On three separate occasions, Hoffman directed Plaintiff to change the customary procedure of handling of loan payoff letters. (*Id.* ¶¶ 16, 20, 21.) Packard believed Hoffman's motive for this was to obtain a higher monthly bonus for himself. (*Id.* ¶¶ 17-18.) On each occasion, Plaintiff reported Hoffman's directives to upper management and after an investigation, the Bank determined that Hoffman's conduct was indeed inappropriate. (Pl.'s Compl. ¶¶ 18-20.) As a result, Hoffman "chastised Plaintiff" and engaged in "retaliatory reprisals against [Packard]" which led Packard to again report Hoffman's adverse conduct. (*Id.* ¶¶ 20-23.)

On or about April 9, 2003, Hoffman informed Packard that Jolynn Adkins, one of Packard's female peers, filed a formal harassment complaint against Plaintiff for attempting to approach and follow her at one of the branch offices. (*Id.* ¶¶ 24-25.) This same employee had previously filed a sexual harassment claim against Plaintiff in February 2002, but after an investigation, that claim was resolved when Packard took a sexual harassment class. His employment status was otherwise unaffected. (*Id.* ¶¶ 14-15.) Plaintiff denied these new assertions and requested that his supervisor review video camera tapes to establish the falsity of the allegations. (*Id.* ¶¶ 26-27.) On April 9, 2003, Packard was suspended and then on April 11, 2003, he was directed to return to the Bank. When he arrived, he discovered that his pending files had been removed from his office, and consequently, Plaintiff assumed he had been terminated and began to pack his personal belongings. (*Id.* ¶ 30.) Then, Hoffman and another management level employee entered Packard's office and told

him that human resources had decided to terminate his employment because of harassment. (*Id.* ¶ 31.) Afterwards, Plaintiff telephoned human resources' vice president, Judy Bradbury, who affirmed his termination, but assured him that the only information prospective employers would receive would be the dates of employment and job title. (*Id.*) In another telephone call, Plaintiff reported to Bradbury that Hoffman was biased and retaliated against him and that he wished to file a complaint against Adkins for filing a false harassment claim against him. (*Id.* ¶¶ 34-35.) However, Defendants did not conduct a full investigation, as required by Bank policy, but merely conducted a "sham" investigation regarding Plaintiff's assertions. (*Id.* ¶¶ 37, 38, 45.) In a conversation with Bradbury on April 14, 2003, Packard was advised that he was not terminated, but rather that he voluntarily resigned his position. (*Id.* ¶ 36.)

## Motion to Dismiss

On a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## Discussion

In Count II of his complaint, Plaintiff asserts a claim for intentional infliction of emotional distress against Defendant. Defendant contends that this claim should fail because it is both preempted by the Illinois Human Rights Act and Plaintiff has not sufficiently alleged a claim for

IIED.

The IHRA divests courts of jurisdiction over "the subject of an alleged civil rights violation other than as set forth in [the] Act." 775 ILL. COMP. STAT. 5/8-111(C). Both gender discrimination and retaliation are included in the statute's definition of "civil rights violation," and an employer commits a civil rights violation when, among other things, it discharges an employee "on the basis of unlawful discrimination." 775 ILL. COMP. STAT. 5/2-102(A), 5/6-101(A); *see* 775 ILL. COMP. STAT. 5/1-102(A) (stating that it is Illinois public policy "[t]o secure for all individuals within Illinois the freedom from discrimination against any individual because of his or her race, color, religion, sex, national origin, ancestry, age, marital status, physical or mental handicap . . . in connection with employment . . . "). "Unlawful discrimination" includes "discrimination against a person because of his . . . sex." 775 ILL. COMP. STAT. 5/1-103(Q). According to the Illinois Supreme Court, the IHRA deprives courts of jurisdiction not only over claims that constitute civil rights violations, but also over any other claim that is "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997).

In Count II, Packard alleges that Bradbury, as the Bank's employee, conducted only a sham investigation of Plaintiff's termination in an effort to discriminate and retaliate against him for his whistle blowing complaints against Hoffman. Plaintiff also contends that Bradbury's communication, first affirming that Packard was terminated for harassment and later contending that Packard had actually voluntarily resigned, "goes beyond the bounds of decency," was coercive, retaliatory, and intentional. *Id.* at 46-48. Additionally, Packard alleges that the Bank, through Bradbury, knew these actions would cause his injuries and as a result he suffered from severe

emotional distress. *Id* at 49-50.

The first allegation that the sham investigation constitutes IIED is grounded in Packard's gender discrimination claim. Plaintiff claims that because he did not receive the same type of investigation that other non-male employees receive; he was discriminated against because of his gender. Without this gender discrimination claim, there would not be a reason for Plaintiff to allege that he was receiving different treatment. It was precisely the different depths of investigation upon which Plaintiff bases his civil rights charge and without this, the claim would not be possible. Thus, the sham investigation is inextricably linked to the civil rights claim and is preempted by IHRA.

While the sham investigation allegations are inextricably linked to Plaintiff's Title VII gender harassment claim, the claim involving Defendants' communication with Packard about the changing status of his employment is not. That communication can be construed as distinct from the civil rights claims and, therefore, those allegations of IIED escape preemption. Communicating conflicting information to a former employee is not conduct within the scope of the IHRA. Thus, an IIED claim based on such conduct would be preempted only if it were so "inextricably linked" to the gender discrimination claim and there was no independent basis for it. *Id.* It is not. The circumstances surrounding Packard's civil rights claim are not necessarily entwined with human resources' communication to an employee regarding the status of employment. Because the IIED claim that is based upon Bradbury's communication could exist even in the absence of the gender discrimination claim, it is not preempted by the IHRA.

The fact that the claim is not preempted does not, however, mean that it is viable. To support a claim for IIED a plaintiff must allege that: (1) defendant's conduct was extreme and outrageous; (2) defendant intended to cause plaintiff severe emotional distress or knew that such distress was

substantially certain to result; and (3) plaintiff did, indeed, suffer extreme emotional distress. *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1998).

To establish extreme and outrageous conduct, the plaintiff must allege more than "mere insult, indignities, threats, annoyances, petty oppression or trivialities." *Adan v. Solo Cup, Inc.*, 2001 U.S. Dist. LEXIS 12726, *10 (Aug. 17, 2001) (citing *Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 89 (1997). "Rather, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Id.* (quoting *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 21 (1992)). Another consideration is the defendant's awareness that the plaintiff is particularly susceptible to emotional distress. *McGrath*, 126 Ill. 2d at 89-90. Behavior that would not normally be considered outrageous may become actionable if the defendant knows that the plaintiff is particularly susceptible. *Id.*

However, courts are leery to find an IIED claim in employment situations because they are concerned that if daily stresses stemming from routine employment issues are actionable, "nearly every employee would have a cause of action." *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 746 (Ill. App. 2000)(citing *Vickers v. Abbott Laboratories*, 308 Ill. App. 3d 393, 410 (1999)). Even so, courts have found actionable behavior, for example, where defendants threatened to exercise their power to wrongfully coerce plaintiffs; when the employer retaliated against an employee who had been asked to illegally falsify work reports; when an employer continually sexually harassed an employee and then threatened to rape and kill her if she refused; and engaging in retaliatory conduct to punish whistle-blowing. *Id.* at 747. In the whistle blowing context, outrageousness will be found only when the conduct is motivated by a "retaliatory animus" and is punitive in nature. *Johnson v. Federal Reserve Bank*, 199 Ill. App. 3d 427, 432 (Ill. App. 1990).

Here, Packard claims he has satisfied the federal pleading standard that the Bradbury's communication to him regarding his employment status was extreme and outrageous. Defendants argue that Plaintiff's has failed to adequately allege that Bradbury's conduct was extreme and outrageous. Under the federal rule of notice pleading, to be viable, allegations require a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454 (1998) (citing *Leatherman, v. Tarrant County Narcotics and Intelligence Coordination Unit*, 507 U.S. 163, 168 (1993)). In order to overcome a motion to dismiss for failure to state a claim, the complaint must at least set out facts sufficient to "outline or adumbrate" the basis of the claim, meaning a complaint must unveil the facts that give rise to the claim. *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 792 (7th Cir. 1996). A plaintiff may plead conclusions, but those conclusions must be supported with facts that apprise the defendant of the basis and grounds of the claim. *Id.* The plaintiff, however, may not properly state a claim by making only conclusions. *Id.*

Here, Packard only alleges that Defendants "often engaged in retaliatory reprisals against him." Plaintiff has not alleged how the conduct rises to the level that crosses the bounds of common decency. Plaintiff has not alleged threats of violence or termination if he did not comply with Bank procedures, nor has he claimed that he was particularly susceptible or that Defendant was preyed on his vulnerabilities. Alleging mere retaliation due to an improper motive will not be enough because bald allegations that fail to give notice of the claim are not be tenable. *Id.* (citing *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996)). Even though Plaintiff states his cause of action, he fails to identify the basis of the claims so as to inform Defendant of how Bradbury's communication was outrageous. Taking all of Plaintiffs assertions as true, these facts alone do not provide a basis for

an IIED claim. Even under our liberal notice pleading standard, Plaintiff's allegations are factually insufficient to claim that informing an employee that he was fired and then later telling the employee instead he actually resigned is extreme and outrageous.

## Conclusion

Based on the foregoing, Defendants' motion to dismiss Count II is granted with prejudice.

**ENTER:**

_____
UNITED STATES DISTRICT JUDGE

DATED: __MAY 3 1 2005__